UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

ARMANDO VIVEIROS,                    )
                                     )
            Plaintiff,               )
      v.                             )        CIVIL ACTION
                                     )        NO. 10-11405-JGD
MICHAEL J. ASTRUE, Commissioner      )
of the Social Security Administration, )
                                     )
            Defendant.               )

**MEMORANDUM OF DECISION AND ORDER
ON CROSS-MOTIONS REGARDING DENIAL OF
SOCIAL SECURITY DISABILITY INSURANCE BENEFITS**

February 23, 2012

DEIN, U.S.M.J.

## I.  INTRODUCTION

Plaintiff Armando Viveiros ("Viveiros") has brought this action pursuant to

section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), challenging the final

decision of the Commissioner of the Social Security Administration (the "Commis-

sioner") denying his claim for Social Security Disability Insurance ("SSDI") benefits.

The matter is presently before the court on the "Plaintiff's Motion for Order Reversing

the Decision of the Commissioner" (Docket No. 15), by which the plaintiff is seeking a

remand for the payment of benefits or, alternatively, for further administrative

proceedings.  It is also before the court on the defendant's "Motion to Affirm the

Commissioner's Decision" (Docket No. 17), by which the Commissioner is seeking an

order affirming his decision to deny Viveiros' claim for benefits.  At issue is whether the

Administrative Law Judge ("ALJ"), in reaching his decision that Viveiros was not

disabled, erred by failing to properly weigh the opinions of the plaintiff's treating

physicians and by failing to properly evaluate the plaintiff's subjective complaints of pain

and other symptoms in accordance with the requirements known as the "Avery factors."

Also at issue is whether the ALJ committed reversible error by failing to include any

references to Viveiros' moderate limitations in concentration, persistence or pace in the

hypothetical questions that he posed to the vocational expert ("VE") during the hearing

on the plaintiff's claim for benefits.

 As described below, this court finds that while the plaintiff's other arguments are

unpersuasive, the ALJ's failure to address the plaintiff's mental limitations in his hypo-

thetical questions to the VE warrants a remand of this matter to the ALJ.  Accordingly,

and for all the reasons detailed herein, the Commissioner's motion to affirm is DENIED,

and the plaintiff's motion to reverse is ALLOWED.  The matter shall be remanded for

further proceedings consistent with this Decision.

## II.  STATEMENT OF FACTS[1]

 Viveiros was born on June 4, 1968, and has a high school education.  (Tr. 38-39).

During the time period from 1990 to December 2002, Viveiros held jobs as a delivery

truck driver, a bus driver, a weaving machine operator, and a truck driver/laborer for the

_____

[1] References to pages in the transcript of the record proceedings shall be cited as "Tr.
__."  The ALJ's decision shall be cited as "Dec." and can be found beginning at Tr. 7.

City of Fall River. (Tr. 39-41, 130). However, on December 2, 2002, Viveiros fell on ice and injured his back. (Tr. 41, 275). He did not return to work, and has remained out of work since that time. (Tr. 41).

The record reveals that Viveiros has been diagnosed with cervical and lumbar strain, degenerative disc disease, and spondylolisthesis, and that he suffers from chronic pain and depression. (See, e.g., Tr. 269, 285, 383-85). He claims that he is disabled and unable to work due to severe and persistent pain in his back and legs, and due to the depression and anxiety that he has suffered as a result of his back injuries. (Tr. 129, 178).

## **Procedural History**

Viveiros filed an application for SSDI benefits on March 18, 2008, claiming that he had been unable to work since December 2, 2002, the date of his back injury. (Tr. 100-06, 124). To qualify for SSDI benefits, an individual must become disabled during the period under which he is insured by the program. See 20 C.F.R. § 404.131. Because Viveiros was last insured on December 31, 2005, he had to establish that he was disabled during the time period between December 2, 2002 and December 31, 2005. (Dec. 2; Tr. 8).

The plaintiff's application was denied initially on May 21, 2008, and upon reconsideration on September 9, 2008. (Tr. 67-72). Subsequently, Viveiros requested a hearing before an ALJ. (Tr. 73). The request was granted and the hearing took place on December 3, 2009. (Tr. 26-62, 73-75). Viveiros, who was not represented by counsel,

appeared and testified at the hearing.  (Tr. 26-54).  In addition, the ALJ elicited testimony

from a VE, which testimony included responses to questions involving a hypothetical

claimant.  (Tr. 54-59).  In questioning the VE, the ALJ was seeking to determine the

extent to which the plaintiff's "limitations errode the unskilled sedentary occupational

base."  (Dec. 12; Tr. 18).  Viveiros contends, however, that the hypothetical questions

that were posed to the VE were insufficient because they did not include his moderate

mental limitation in concentration, persistence or pace.  As detailed below, this court

agrees.

In the first hypothetical, the ALJ asked the VE to consider

> a hypothetical Claimant, the same age, education and work back-
> ground as [Viveiros] with a residual functional capacity for work at
> the sedentary level of exertion but requiring an option to stand and
> would stand for a few minutes each hour.  The hypothetical
> Claimant would be limited to unskilled work tasks, would require
> work breaks every two hours.

(Tr. 57).  The ALJ then asked the VE to state whether those limitations would preclude

the claimant from performing Viveiros' past work, and whether there were other jobs that

a claimant with those limitations could perform.  (Tr. 57).  The VE testified that a

claimant having those restrictions would be unable to perform the plaintiff's past work,

but that there were jobs within the national and regional economy that the claimant could

perform, including the jobs of surveillance system operator, table worker, and order clerk.

(Tr. 57-58).

In the second hypothetical, the ALJ asked the VE to consider a claimant with the same limitations who also "required periods of recumbent rest outside their normal work break or lunch break[.]" (Tr. 59). When asked whether the additional limitation would preclude the jobs that the VE had described in response to the first hypothetical, the VE responded that it would preclude those jobs. (Tr. 59). No further hypothetical questions were posed to the VE at the hearing.

On January 26, 2010, the ALJ issued a decision denying the plaintiff's application for benefits. (Dec. 12; Tr. 18). The Decision Review Board selected Viveiros' claim for review, but because it did not complete its review within the required time period, the ALJ's decision became the final decision of the Commissioner for purposes review. (Tr. 1-3). Thus, the plaintiff has exhausted all of his administrative remedies, and the case is ripe for review by this court pursuant to 42 U.S.C. § 405(g).

## The ALJ's Decision

As described above, in order to qualify for SSDI benefits, Viveiros had to establish that he was disabled prior to the expiration of his insured status on December 31, 2005. The ALJ concluded that from December 2, 2002 through the date when Viveiros was last insured, the plaintiff was not "under a disability within the meaning of the Social Security Act[,]" which defines "disability" as "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment or combination of impairments that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months." (Dec. 1-2;

Tr. 7-8).  See also 42 U.S.C. § 423(d)(1)(A).  There is no dispute that the ALJ, in

reaching his decision that Viveiros was not disabled, applied the five-step sequential

evaluation required by 20 C.F.R. § 404.1520.  The procedure resulted in the following

analysis, which is detailed in the ALJ's "Findings of Fact and Conclusions of Law."  (See

Dec. 3-12; Tr. 9-18).

The first inquiry in the five-step process is whether the claimant is "engaged in

substantial gainful work activity[.]"  Seavey v. Barnhart, 276 F.3d 1, 5 (1st Cir. 2001).  If

so, the claimant is automatically considered not disabled and the application for benefits

is denied.  See id.  In the instant case, the ALJ determined that Viveiros did not engage in

substantial work activity during the period from his alleged onset date of December 2,

2002 through his last insured date of December 31, 2005, so the ALJ proceeded to the

next step in the analysis.  (Dec. Finding #2; Tr. 9).

The second inquiry is whether the claimant has a "severe impairment," meaning an

"impairment or combination of impairments which significantly limits [the claimant's]

physical or mental ability to do basic work activities[.]" 20 C.F.R. § 404.1520(c).  If not,

the claimant is considered not disabled and the application for benefits is denied.  See

Seavey, 276 F.3d at 5.  Here, the ALJ concluded that Viveiros suffered from several

severe impairments, including lumbosacral degenerative disc disease, a pain syndrome,

and a depressive disorder.  (Dec. Finding #3; Tr. 9).  Therefore, his analysis continued.

The third inquiry is whether the claimant has an impairment equivalent to a

specific list of impairments contained in Appendix 1 of the Social Security regulations, in

-6-

which case the claimant would automatically be found disabled.  <u>See</u> <u>Seavey</u>, 276 F.3d at

5; 20 C.F.R. § 404.1520(d).  At this step, the ALJ concluded that Viveiros' impairments,

either alone or in combination, did not meet or medically equal any of the listed

impairments.  (Dec. Finding #4; Tr. 10).  While the plaintiff does not challenge this

conclusion, as detailed below, the parties dispute the significance of the ALJ's finding at

this stage that Viveiros had moderate limitations in an area of mental functioning.

In reaching his conclusion at step three, the ALJ considered whether Viveiros'

depressive disorder met or medically equaled the criteria of Listing 12.04 for affective

disorders.  (Dec. 4; Tr. 10).  <u>See</u> <u>also</u> 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.04.  The

ALJ recognized that in order to meet Listing 12.04,

> the [plaintiff's] mental impairments must result in at least two of the
> following: marked restriction of activities of daily living; marked
> difficulties in maintaining social functioning; marked difficulties in
> maintaining concentration, persistence, or pace; or repeated episodes
> of decompensation, each of extended duration.  A marked limitation
> means more than moderate but less than extreme.  Repeated episodes
> of decompensation, each of extended duration, means three episodes
> within 1 year, or an average of once every 4 months, each lasting for
> at least 2 weeks.

(<u>Id.</u>).

The ALJ determined that Viveiros' mental impairments did not satisfy the

applicable criteria.  (Dec. 4-5; Tr. 10-11).  In so finding, the ALJ concluded, in relevant

part, that the plaintiff had mild limitations in the areas of social functioning and activities

of daily living, but that he had "moderate" limitations with regard to concentration,

persistence or pace.  (Dec. 4; Tr. 10).  The parties dispute whether the ALJ should have

incorporated this finding into the hypothetical questions that he posed to the VE at the hearing.  As detailed below, this court finds that the ALJ erred by failing to do so, and that this error requires a remand of this matter to the Commissioner.

Because the ALJ determined that Viveiros' impairments did not meet or equal any of the listed impairments, he proceeded to step four in the evaluation process.  The fourth inquiry is whether "the applicant's 'residual functional capacity' is such that he or she can still perform past relevant work[.]"  Seavey, 276 F.3d at 5.  It was at this stage of the analysis that the ALJ determined the plaintiff's residual functional capacity ("RFC").  Specifically, the ALJ found, "[a]fter careful consideration of the entire record," that although the plaintiff could not perform his past relevant work, "through the date last insured, the claimant had the [RFC] to perform sedentary work as defined in 20 CFR 404.1567(a)[2] except that he required an option to sit or stand at his will and is limited to unskilled work and requires a work break every two hours."  (Dec. Finding #5; Tr. 11).  Viveiros contends that the ALJ did not adequately weigh the opinions of his treating physicians or properly evaluate his subjective complaints of pain and other symptoms in connection with this finding.  As described below, this court finds that the ALJ's treatment of these matters was appropriate.

---

[2]  20 C.F.R. § 404.1567(a) defines "sedentary work" as follows: "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting and carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."

In reaching his conclusion regarding Viveiros' RFC, the ALJ provided a detailed description of the medical records relating to the plaintiff's back condition and chronic pain syndrome.  (Dec. 5-9; Tr. 11-15).  This included a discussion of medical records covering the time period from December 2002 through September 2009, and a description of findings and opinions from at least nine different treating and examining physicians. (Id.).  In addition, the ALJ provided a detailed description of the medical evidence relating to Viveiros' psychiatric condition.  (Dec. 9-11; Tr. 15-17).  That evidence included records from both examining and non-examining sources, and covered the time period from December 2002 through March 2007.  (Dec. 9; Tr. 15).

Following his consideration of the medical evidence, the ALJ determined that while the plaintiff's impairments "could reasonably be expected to cause some symptoms of the type alleged," his complaints as to the intensity, persistence and limiting effects of those symptoms were not entirely credible.  (Id.).  In particular, the ALJ found that Viveiros' alleged limitations in his ability to sit, stand, walk, lift, carry, and maintain attention and concentration, as well as his alleged need to lie down, "are not substantiated by competent medical evidence to the degree alleged."  (Dec. 10; Tr. 16).  He also found that "the alleged frequency, severity, and duration of the claimant's depression and pain is not supported by the weight of the medical evidence to the degree alleged."  (Id.).

In rendering his opinion as to the plaintiff's credibility, the ALJ considered, inter alia, Viveiros' statements about the effect that his pain and depression had on his functional abilities and activities of daily living, as well as his claims regarding the extent

-9-

of his psychiatric impairment. (Id.).  However, the ALJ determined that the plaintiff's

allegations were inconsistent with the medical records, and he explained, using references

to the record, why the medical evidence undermined the plaintiff's claims of disabling

symptoms.  (Dec. 10-11; Tr. 16-17).  The ALJ also described how he had weighed

conflicting opinions from Viveiros' treating physicians and other medical sources

regarding the plaintiff's ability to resume gainful employment.  (Id.).  Thus, as further

detailed below, he provided specific explanations for his decision to credit certain of

those opinions and to reject others.  (Id.).

Based on his assessment of Viveiros' RFC, the ALJ found that the plaintiff was

unable to perform his past relevant work as a bus driver, asphalt truck driver, delivery

truck driver, and loom operator.  (Dec. 11; Tr. 17).  Consequently, the ALJ reached the

fifth and last step in the sequential analysis.

The fifth inquiry is whether, given the claimant's RFC, education, work

experience and age, the claimant is capable of performing other work.  See Seavey, 276

F.3d at 5; 20 C.F.R. § 404.1520(g).  If so, the claimant is not disabled.  20 C.F.R. §

404.1520(g).  At step five, the Commissioner has the burden "of coming forward with

evidence of specific jobs in the national economy that the applicant can still perform."

Seavey, 276 F.3d at 5.  Here, the ALJ relied on the testimony of the VE to conclude that

"the claimant was capable of making a successful adjustment to other work that existed in

significant numbers in the national economy."  (Dec. 12; Tr. 18).  Accordingly, the ALJ

found that Viveiros was not disabled.  (Id.).  The plaintiff argues, however, that the

hypotheticals put to the VE were inadequate.  As detailed below, this court agrees.

Additional factual details relevant to this court's analysis are described below

where appropriate.

## III.  ANALYSIS

### A.  Standard of Review

Viveiros is seeking judicial review of the Commissioner's "final decision"

pursuant to the Social Security Act § 205(g), 42 U.S.C. § 405(g) (the "Act").  The Act

provides in relevant part that:

> Any individual, after any final decision of the Commissioner of
> Social Security made after a hearing to which he was a party,
> irrespective of the amount in controversy, may obtain a review of
> such decision by a civil action .... The court shall have power to
> enter, upon the pleadings and transcript of the record, a judgment
> affirming, modifying, or reversing the decision of the Commissioner
> of Social Security, with or without remanding the cause for a re-
> hearing.  The findings of the Commissioner of Social Security as to
> any fact, if supported by *substantial evidence*, shall be conclusive ....

42 U.S.C. § 405(g) (emphasis added).  The Supreme Court has defined "substantial

evidence" to mean "more than a mere scintilla.  It means such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion."  Richardson v.

Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971) (quoting

Consol. Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S. Ct. 206, 217, 83 L. Ed. 126

(1938)); accord Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st

Cir. 1991).

-11-

It has been explained that:

> In reviewing the record for substantial evidence, we are to keep in mind that "issues of credibility and the drawing of permissible inference from evidentiary facts are the prime responsibility of the [Commissioner]."  The [Commissioner] may (and, under his regulations, must) take medical evidence.  But the resolution of conflicts in the evidence and the determination of the ultimate question of disability is for him, not for the doctors or for the courts. We must uphold the [Commissioner's] findings in this case if a reasonable mind, reviewing the record as a whole, could accept it as adequate to support his conclusion.

Lizotte v. Sec'y of Health & Human Servs., 654 F.2d 127, 128 (1st Cir. 1981) (quoting

Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)).  Thus,

the "court's function is a narrow one limited to determining whether there is substantial

evidence to support the [Commissioner's] findings and whether the decision conformed

to statutory requirements."  Geoffroy v. Sec'y of Health & Human Servs., 663 F.2d 315,

319 (1st Cir. 1981).  The Commissioner's decision must be affirmed, "even if the record

arguably could justify a different conclusion, so long as it is supported by substantial

evidence."  Rodriguez Pagan v. Sec'y of Health & Human Servs., 819 F.2d 1, 3 (1st Cir.

1987), cert. denied, 484 U.S. 1012, 108 S. Ct. 713, 98 L. Ed. 2d 663 (1988).

"Even in the presence of substantial evidence, however, the Court may review

conclusions of law, and invalidate findings of fact that are 'derived by ignoring evidence,

misapplying the law, or judging matters entrusted to experts.'"  Musto v. Halter, 135 F.

Supp. 2d 220, 225 (D. Mass. 2001) (quoting Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir.

1999) (per curiam)) (internal citations omitted).  "Thus, if the ALJ made a legal or factual

error, the court may reverse or remand such decision to consider new, material evidence

or to apply the correct legal standard." <u>Ross v. Astrue</u>, Civil Action No. 09-11392-DJC,

2011 WL 2110217, at *2 (D. Mass. May 26, 2011) (internal citation omitted).

      **B.**    **<u>Opinions of Treating Physicians</u>**

      Viveiros argues that the ALJ's findings regarding his RFC were not supported by

substantial evidence because the ALJ did not properly weigh the opinions of the

plaintiff's treating physicians, and because he failed to provide an adequate explanation

for rejecting those opinions.  For the reasons that follow, this court finds that the ALJ

appropriately weighed the opinions of Viveiros' treatment providers, and provided

sufficient support for his decision to reject the opinions of those who found Viveiros to

be disabled.

      In assessing an individual's RFC, "[a]djudicators must weigh medical source

statements under the rules set out in 20 CFR 404.1527 . . . providing appropriate

explanations for accepting or rejecting such opinions."  SSR 96-5p, 1996 WL 374183, at

*5 (S.S.A. 1996).  Pursuant to those rules, "'[c]ontrolling weight' is typically afforded a

treating physician's opinion on the nature and severity of an impairment where it is 'well-

supported by medically acceptable clinical and laboratory diagnostic techniques and is

not inconsistent with the other substantial evidence' in the claimant's case."  <u>Arruda v.</u>

<u>Barnhart</u>, 314 F. Supp. 2d 52, 72 (D. Mass. 2004) (quoting 20 C.F.R. §§ 404.1527(d)(2)

and 416.927(d)(2)).  Thus, a treating physician's opinion is not necessarily dispositive.

The ALJ may "downplay the weight afforded a treating physician's assessment of the

nature and severity of an impairment where . . . it is internally inconsistent or inconsistent with other evidence in the record including treatment notes and evaluations by examining and nonexamining physicians." Id. See also 20 C.F.R. § 404.1527(d)(2)-(4). No matter what weight the ALJ decides to give the opinion of a treating physician, the ALJ is required to "give good reasons in [his] notice of determination or decision for the weight [given to the] treating source's opinion." 20 C.F.R. § 404.1527(d)(2).

### Opinions Regarding Plaintiff's Physical Impairments

The plaintiff argues that the ALJ did not adequately address the opinions of Dr. Alvin Marcovici, a neurological surgeon, and Dr. Martin Miner, Viveiros' primary care physician, regarding the severity of Viveiros' physical condition. (Pl. Reply Mem. (Docket No. 22) at 1-3). On September 30, 2003, Dr. Marcovici reported that Viveiros was suffering from "severe disabling back pain" as a result of degenerated L4-5 and L5-S1 discs, and had not had significant improvement with injections. (Tr. 253). Similarly, on June 29, 2004, Dr. Minor opined that Viveiros was "disabled secondary to chronic low back pain and cervical spine pain," and on February 13, 2006, following an evaluation of the plaintiff, he reported that Viveiros could do no more than "two hours of light duty a day up until February 2005, and now is completely disabled." (Tr. 293, 924). Although the plaintiff acknowledges that these opinions are inconsistent with other medical evidence in the record, he contends that they were entitled to controlling weight because Dr. Marcovici is a specialist and Dr. Minor based his opinion on a review of all the plaintiff's medical records. (Pl. Reply Mem. at 1-3).

This court finds that the ALJ was not compelled to give controlling weight to the opinions of Dr. Marcovici and Dr. Minor, and that he provided an adequate explanation for rejecting their opinions.  As an initial matter, "'the resolution of conflicts in the evidence and the determination of the ultimate question of disability is for [the Commissioner], not for the doctors or for the courts.'"  Monroe v. Barnhart, 471 F. Supp. 2d 203, 211 (D. Mass. 2007) (quoting Lizotte, 654 F.2d at 128).  Therefore, the fact that these doctors rendered opinions that Viveiros was disabled from working is not dispositive.

Moreover, as the ALJ highlighted in his written decision, the opinions of Dr. Marcovici and Dr. Miner conflicted with opinions from other treating and examining physicians regarding the extent and severity of Viveiros' back condition and pain syndrome through the date when he was last insured.  (See Dec. 10; Tr. 16).  For example, but without limitation, the ALJ pointed out that in 2002, shortly after Viveiros' accident, the plaintiff was examined by Dr. James Coleman from the Orthopedic Clinic at Charlton Memorial Hospital.  (Dec. 6, Tr. 12; see also Tr. 275-76).  Following his examination, Dr. Coleman reported that Viveiros had good mobility in his cervical spine, with no particular point tenderness.  (Id.).  He also found hypoactive reflexes in the upper extremities, intact motor power, a slight restriction of motion in the lumbar spine, and straight leg raises to 70 degrees bilaterally.  (Id.).  Dr. Coleman diagnosed Viveiros as having lumbar and cervical strain, preexisting Grade 1 L5 spondylolisthesis, and preexisting cervical degenerative disease.  (Id.).  He advised the plaintiff to take Anaprox and to seek physical therapy.  (Id.).  In addition, he opined that the plaintiff was capable

-15-

of sedentary work.  (Id.).  The record indicates that Viveiros continued to seek treatment

from Dr. Coleman through at least December 2003.  (See Tr. 542-43).  Dr. Coleman

repeatedly indicated that Viveiros was capable of working.  (See, e.g., Tr. 269, 273, 343).

Similarly, the ALJ noted that in March 2004, the plaintiff was evaluated by Dr.

Michael DiTullio, Jr. at South Suburban Neurological Associates, Inc.  (Dec. 7-8; Tr. 13-

14; see also Tr. 542-47).  Dr. DiTullio reviewed Viveiros' medical records, including

various radiological studies, considered the history provided to him by the plaintiff, and

performed a physical examination.  (Id.).  He opined that Viveiros had suffered a small

L4-5 disc herniation, as well as aggravation and exaggeration of a pre-existing L5

spondylolysis, as a result of his December 2, 2002 accident, but that there was no

evidence of any associated cervical nerve root abnormality or neck injury.  (Id.).

Moreover, he concluded that at the time of the examination, Viveiros had a "5 percent

impairment of the whole person referable to his persistent symptomatology involving the

lumbosacral area and the lower extremities."  (Tr. 547; see also Dec. 7; Tr. 13).  Dr.

DiTullio advised the plaintiff to avoid lifting over 30 pounds or engaging in prolonged

postural fixation, repetitive bending, and excessive spinal loading.  (Id.).

In explaining why he declined to credit the assessments of Dr. Marcovici and Dr.

Miner that Viveiros was disabled, the ALJ expressly relied, among other things, on the

opinions of Dr. Coleman and Dr. DiTullio, as well as on the opinions of other treating

and examining physicians which undermined the plaintiff's claim of disability.  (See Dec.

10; Tr. 16).  As described above, it was up to the ALJ to resolve conflicts in the evidence.

See Monroe, 471 F. Supp. 2d at 211.  The ALJ provided a substantial explanation for rejecting Dr. Marcovici's and Dr. Miner's opinions.

### Opinions Regarding Plaintiff's Mental Impairments

Viveiros also contends that the ALJ did not sufficiently weigh the assessments of Charles Howland, Ph.D., Frank Sparadeo, Ph.D., and Douglas Riley, M.S.W. regarding the severity of the plaintiff's mental condition.  As described below, none of these sources was a treating physician.  Therefore, their opinions are not presumptively entitled to controlling weight under the treating physician rule.  See 20 C.F.R. § 404.1527(d).  Furthermore, the ALJ  provided a sufficient basis for his decision not to credit the opinions of Dr. Howland and Dr. Sparadeo.  Although the ALJ failed to address Mr. Riley's opinions in his written decision, this court finds that his omission was harmless.

As the ALJ described in his decision, Dr. Howland performed a consultative examination of the plaintiff on March 29, 2006, about three months after his date last insured.  (Dec. 9; Tr. 15; see also Tr. 305-08).  During the evaluation, Viveiros reported that he experienced chronic pain stemming from his back injury, as well as a variety of problems relating to his mental health, including but not limited to, a depressed mood, insomnia, crying spells, anxiety, occasional suicidal ideation, and lack of motivation.  (Id.).  He also admitted to occasional marijuana use.  (Id.).  Dr. Howland noted that Viveiros was well oriented and displayed concrete reasoning, but that he had a constricted affect, a depressed mood, impaired attention and concentration related in part to limited cognitive skills, fair memory and recall, and impulsive and immature judgment.

(Id.).  He further noted that Viveiros was able to drive, shop with his wife, and socialize with friends, although his wife assisted him with personal care.  Dr. Howland diagnosed the plaintiff as having a reactive type dysthymic disorder,[3] borderline intellectual functioning, by estimate, and a GAF score of 45.[4]  (Id.).

The ALJ also described the findings of Dr. Sparadeo, who evaluated Viveiros on July 14, 2006, February 27, 2007, and March 13, 2007.  (Dec. 9; Tr. 15; see also Tr. 383-85).  As the ALJ indicated in his decision, Dr. Sparadeo noted that the plaintiff was alert, fully oriented, pleasant, cooperative, displayed normal speech, and had logical and organized thought processes.  (Id.).  However, during the evaluations, Viveiros reported that he suffered from chronic pain as a result of his 2002 injury, and that he experienced a variety of problems, including but not limited to, difficulties with memory, extreme fatigue, tearfulness, irritability, feelings of worthlessness, nervousness, and occasional suicidal ideation.  (Id.).  Dr. Sparadeo performed psychological testing and diagnosed Viveiros as having a pain disorder with psychological factors, major depression with co-occurring anxiety, and a GAF score of 45.  (Id.).

---

[3]  "Dysthymia is 'a mood disorder characterized by depressed feeling ... and loss of interest or pleasure in one's usual activities and in which the associated symptoms have persisted for more than two years but are not severe enough to meet the criteria for major depression.'" Lord v. Apfel, 114 F. Supp. 2d 3, 10 n.11 (D.N.H. 2000) (quoting Dorland's Illustrated Med. Dictionary 519 (28th ed. 1994)).

[4]  A GAF score between 45 and 50 "indicat[es] serious symptoms or serious impairment in functioning ...."  Campbell v. Astrue, 627 F.3d 299, 303 (7th Cir. 2010).

Although the ALJ considered this evidence, he explained that he was giving limited weight to the opinions of Dr. Howland and Dr. Sparadeo because their evaluations occurred after the date when Viveiros was last insured, and because their findings were based on the plaintiff's statements, which the ALJ found to be not entirely credible, rather than on their own observations during the relevant time period. (Dec. 11; Tr. 17). The ALJ further explained that he was giving little weight to the GAF score of 45 because there was little if any evidence in the record during the relevant time period to support that level of impairment, and because Viveiros admitted to using marijuana, which is a depressant. (Id.).

In reaching his conclusions regarding Viveiros' mental limitations, the ALJ also noted that the plaintiff had sought no counseling or psychiatric treatment,[5] and had minimal complaints, prior to his date last insured. (Dec. 10; Tr. 16). Moreover, the ALJ cited to evidence which conflicted with the more dire assessments of Dr. Howland and Dr. Sparadeo. That evidence included emergency room records from 2002 and 2004,

---

[5] Viveiros argues that his failure to seek mental health treatment during the relevant time period is an insufficient basis for determining that he had no disabling mental impairments through the expiration of his date last insured. (Pl. Mem. (Docket No. 14) at 14-15). This court agrees that the fact that Viveiros did not receive such treatment during the relevant period does not alone support the ALJ's conclusion that he retained the mental capacity needed to maintain employment. See Mason v. Apfel, 2 F. Supp. 2d 142, 149 (D. Mass. 1998) ("The fact that Plaintiff was not treated for her symptoms until long after the symptoms first appeared does not preclude the possibility that Plaintiff became disabled before she received treatment." (quotations, citation and punctuation omitted)). However, as described herein, the ALJ did not rely solely on the plaintiff's failure to obtain treatment. Rather, he also relied on evidence from the record which undermined the plaintiff's claim of a disabling mental condition during the relevant time period.

which showed that Viveiros was oriented with a normal mood and affect, (Dec. 9-10; Tr. 15-16), as well as an assessment of Viveiros' mental functional limitations by an agency reviewer, who determined that up through the date last insured, the plaintiff had no more than moderate limitations.  (Dec. 9; Tr. 15).  Specifically, the agency reviewer opined that during the relevant time period, Viveiros retained the mental capacity to understand and remember simple information; to sustain attention, persistence and pace sufficient to perform simple tasks throughout a normal work day; to sustain basic, non-intensive work-related social interactions; and to respond appropriately to simple, routine changes in the work setting.  (Tr. 309-25).  Thus, the agency reviewer determined that Viveiros remained capable of working.

The record demonstrates that the ALJ adequately weighed the opinions of Dr. Howland and Dr. Sparadeo, and provided a sufficient explanation for not crediting those opinions.  His decision in that regard is based on substantial evidence.

The ALJ did not address the records from Mr. Riley in his written decision.  The record indicates that Viveiros began seeing Mr. Riley, a clinical social worker, on April 24, 2008.  (Tr. 476).  In September 2008, Mr. Riley diagnosed the plaintiff with dysthymia, depression, post-traumatic stress syndrome, and substance abuse.  (Tr. 855-57).  On May 18, 2009, Mr. Riley diagnosed the plaintiff with recurrent major depression, panic disorder with agoraphobia, and intermittent explosive disorder, and he recommended that Viveiros receive psychotherapy once a week.  (Tr. 883).

Although it would have been preferable for the ALJ to have addressed Mr. Riley's opinions in his written decision, this court finds that his failure to do so does not warrant a reversal.  As an initial matter, clinical social workers like Mr. Riley are not considered "acceptable medical source[s]" whose opinions are entitled to controlling weight under the treating physician rule.  Courtemanche v. Astrue, No. CA 10-427M, 2011 WL 3438858, at *17 (D.R.I. July 14, 2011).  See also 20 C.F.R. §§ 404.1513(a), 404.1527(d).  Additionally, Mr. Riley did not provide counseling to the plaintiff until more than two years after the date when Viveiros was last insured.  Furthermore, to the extent Mr. Riley's assessments of Viveiros suggest that the plaintiff was disabled from working as a result of his mental limitations, they are inconsistent with the agency reviewer's opinion that Viveiros had only moderate limitations in mental functioning and retained the capacity to work during the relevant time period.  (Tr. 309-25).  Therefore, this court concludes that the ALJ's failure to address Mr. Riley's opinion was at most harmless error.  See Heston v. Comm'r of Soc. Sec., 245 F.3d 528, 535-36 (6th Cir. 2001) (finding that ALJ's failure to address treating physician's report constituted harmless error).

### C.    Alleged Failure to Apply the "Avery Factors"

The plaintiff argues that the ALJ's assessment of his credibility is not supported by substantial evidence because the ALJ failed to apply the so-called "Avery factors" in deciding not to credit Viveiros' complaints of disabling pain and other symptoms.  Although the ALJ did not specifically list the Avery factors in his written decision, this

court finds that he considered the relevant factors in connection with his credibility determination.

"The regulations recognize that a person's symptoms may be more severe than the objective medical evidence suggests.  Therefore, the regulations provide six factors (known as the Avery factors) that will be considered when the applicant alleges pain" or other symptoms.  Makuch v. Halter, 170 F. Supp. 2d 117, 126 (D. Mass. 2001) (internal punctuation, emphasis, and citation omitted).  These are:

> (1) the nature, location, onset, duration, frequency, radiation, and intensity of pain; (2) any precipitating or aggravating factors; (3) the type, dosage, effectiveness, and adverse side effects of any pain medication; (4) any treatment, other than medication, for the relief of pain; (5) any functional restrictions; and (6) the claimant's daily activities.

Rohrberg v. Apfel, 26 F. Supp. 2d 303, 308 (D. Mass. 1998) (citing Avery v. Sec'y of Health & Human Servs., 797 F.2d 19, 29 (1st Cir. 1986)).  While the ALJ must consider each of these factors, there is no requirement that he make specific findings regarding each of the factors in his written decision.  See 20 C.F.R. § 404.1529(c)(3) (listing Avery factors as factors that the Commissioner "will consider" in evaluating subjective complaints of pain and other symptoms).  See also Rand v. Barnhart, 357 F. Supp. 2d 361, 368 (D. Mass. 2005) ("While it may be argued that it would have been more helpful for the hearing officer explicitly to outline the *Avery* factors in making his credibility determination, it is sufficiently clear from the record that he thoroughly questioned [the claimant] according to those guidelines at the hearing[.]").

Here, the ALJ fulfilled his obligation to consider the <u>Avery</u> factors.  In his written decision, the ALJ expressly addressed the plaintiff's statements regarding the intensity, persistence and limiting effects of his symptoms.  For example, but without limitation, the ALJ acknowledged the plaintiff's allegations that since his accident in 2002, he has suffered chronic back pain, as well as pain in his neck, right arm and leg, which precludes him from standing for more than 15 minutes or sitting for more than 20 minutes, prevents him from lifting or carrying objects weighing more than one pound, and causes him to lie down for much of the day.  (Dec. 6-10; Tr. 12-16).  He also acknowledged Viveiros' claim that due to his depression, he suffers from various limitations, including memory problems, extreme fatigue, tearfulness, irritability, and impaired motivation.  (Dec. 9; Tr. 15).  However, the ALJ found that medical records from the relevant period described physical capabilities which conflicted with the plaintiff's statements.  (Dec. 10; Tr. 16). He also noted that the plaintiff had expressed minimal complaints about his depression through the expiration of his date last insured.  (<u>Id.</u>).

With respect to treatment, the ALJ considered evidence that Viveiros reported dramatic pain relief with Oxycontin, but no relief with chiropractic and physical therapy. (Dec. 7; Tr. 13).  He also noted that the plaintiff had not sought counseling or psychiatric treatment during the insured period.  (Dec. 10; Tr. 16).  Moreover, the ALJ determined that the plaintiff had shown no "[p]ersistent adverse side effects" from his medications that would have precluded him from performing sustained competitive work over the course of a normal work day in the positions described by the VE.  (<u>Id.</u>).

Finally, the record illustrates that the ALJ considered Viveiros' statements about his activities of daily living, including the plaintiff's participation in household chores, social activities, and interaction with his family members, but that he found those statements to be inconsistent with other evidence in the record.  (Dec. 4, 10; Tr. 10, 16; see also Tr. 48-49).  Accordingly, the record demonstrates that the ALJ applied the Avery factors in deciding not to credit Viveiros' complaints of disabling pain and other symptoms.

**D.     Hypothetical Questions to the VE**

This court does agree with Viveiros' contention that the ALJ erred by failing to reference the plaintiff's moderate mental limitations in his hypothetical questions to the VE.  At step five in the analytical process, the Commissioner must provide evidence that the claimant can still perform work that exists in significant numbers in the national economy.  See Seavey, 276 F.3d at 5.  "The opinion of a vocational expert that a Social Security claimant can perform certain jobs qualifies as substantial evidence at the fifth step of the analysis."  Sousa v. Astrue, 783 F. Supp. 2d 226, 235 (D. Mass. 2011).  "In order to be substantial evidence, however, the opinion of the vocational expert must be in response to a hypothetical that accurately describes the claimant's limitations."  Id.  In the instant case, the ALJ found, at step three in the sequential analysis, that Viveiros had "moderate difficulties" in maintaining concentration, persistence or pace.  (Dec. 4; Tr. 10).  However, it is undisputed that he did not include such a limitation in his hypothetical questions to the VE.  (See Def. Supp. Mem. (Docket No. 23) at 4).

-24-

Therefore, the ALJ's decision was not based on substantial evidence.  See Garay v. Sec'y of Health & Human Servs., 46 F.3d 1114, 1995 WL 54077, at *4 (1st Cir. Feb. 10, 1995) (unpub. op.) (finding that ALJ erred by failing to include "mild to moderate" mental disorder in hypothetical presented to VE); Ross v. Astrue, Civil Action No. 09-11392-DJC, 2011 WL 2110217, at *6, 11 (D. Mass. May 26, 2011) (where ALJ found, at step three, that claimant had "moderate difficulties" in maintaining concentration, persistence or pace, failure to address such mental limitations in hypothetical questions to VE constituted error); Guber v. Astrue, No. 1:10-cv-172-JAW, 2011 WL 1253888, at *2-3 (D. Me. Mar. 30, 2011) (slip op.) (finding that ALJ committed reversible error by failing to pose hypothetical to VE which included mention of moderate limitation in concentration, persistence, or pace that ALJ had found to exist at step 2 in the sequential analysis).

The Commissioner argues that a finding that the plaintiff's mental impairments are "severe" for purposes of step two does not require that such impairments be included in the hypothetical to the VE.  (Def. Supp. Mem. at 2-3).  This court agrees that different analyses are required at each step, and the fact that an impediment may be "severe" for purposes of step two does not require a finding that the impairment significantly restricts the claimant's ability to perform work, his RFC.  See Sykes v. Apfel, 228 F.3d 259, 268 n.12 (3d Cir. 2000); Arruda v. Barnhart, 314 F. Supp. 2d 52, 78-79 (D. Mass. 2004). However, that argument fails to address the issue raised by the plaintiff in support of his motion, namely whether the ALJ's finding of  "moderate difficulties" in concentration,

persistence or pace at step three should have been included in his questions to the VE. (See Pl. Mem. (Docket No. 14) at 6, 10).  As described above, courts that have addressed this issue have answered the question in the affirmative.

This court also finds unpersuasive the Commissioner's argument that the hypothetical questions that were posed to the VE were appropriate because they included limitations contained in the ALJ's finding regarding Viveiros' RFC, which did not reflect any mental limitations.  (Def. Supp. Mem. at 4).  In connection with his determination of Viveiros' RFC, the ALJ explained that he was giving the plaintiff "the benefit of the doubt in assessing moderate non-exertional limitations[,]" and was finding that the plaintiff had mental impairments "that limited but did not preclude functioning."  (Dec. 11; Tr. 17).  Thus, notwithstanding the Commissioner's argument to the contrary, it appears that the ALJ did intend to incorporate Viveiros' moderate mental limitations into his assessment of the plaintiff's RFC.  Nevertheless, it is undisputed that there is nothing in the hypothetical questions that were presented to the VE which would have alerted the VE to the presence of such limitations.[6]  (See Def. Supp. Mem. at 4).  Therefore, the ALJ's decision to deny Viveiros benefits was not based on substantial evidence.

------

[6]  To the extent the ALJ intended to address the plaintiff's moderate mental impairment by including limitations to "unskilled work tasks" and "breaks every two hours" in his description of a hypothetical claimant, this was insufficient to alert the VE to the presence of such an impairment.  A limitation to "unskilled work" does not necessarily equate with "moderate difficulties" in concentration, persistence or pace.  See Maldonado v. Astrue, Civil No. 08-412-B-W, 2009 WL 1885057, at *4-6 (D. Me. June 30, 2009) (slip op.) (rejecting assumption that "'moderate difficulties' with concentration, persistence, or pace" did not limit substantially the requirements of unskilled work).  Therefore, the inclusion of unskilled work in the hypothetical questions did not adequately address the plaintiff's mental limitations.

**E.**     **Nature of Relief**

The plaintiff requests that the court remand his case to the Commissioner for the payment of benefits, or in the alternative, for further development of the record. This court finds that the circumstances of this case warrant a remand so that the ALJ may elicit further VE testimony consistent with this Decision.

"[O]rdinarily the court can order the agency to provide the relief it denied only in the unusual case in which the underlying facts and law are such that the agency has no discretion to act in any manner other than to award or to deny benefits." Seavey, 276 F.3d at 11. Accordingly, "a judicial award of benefits would be proper where the proof of disability is overwhelming or where the proof is very strong and there is no contrary evidence." Id. This is not such a case. Where, as here, the ALJ failed to obtain VE testimony addressing the plaintiff's mental limitations, the appropriate remedy is to remand the matter for further administrative action. See Garay, 1995 WL 54077, at *4 (finding remand warranted where ALJ failed to elicit testimony from VE which addressed claimant's mental impairments); Ross, 2011 WL 2110217, at *13 (remanding case to ALJ with instructions to "obtain and consider vocational expert testimony that addresses the proper hypothetical questions which include all of the limitations supported by the record[.]"). Accordingly, this matter will be remanded to the ALJ so that he can obtain further testimony from a VE that addresses the plaintiff's moderate mental limitations.

## IV.  ORDER

For all the reasons detailed herein, the defendant's "Motion to Affirm the Commissioner's Decision" (Docket No. 17) IS DENIED, and the "Plaintiff's Motion for Order Reversing the Decision of the Commissioner" (Docket No. 15) is ALLOWED. This matter is remanded to the ALJ for further proceedings consistent with this Decision.

       / s / Judith Gail Dein                    
Judith Gail Dein
United States Magistrate Judge